IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ESTERINE JULUN,<br>Plaintiff | § § § § § § § § § § | CIVIL ACTION NO. _____ |
| v. | | |
| BOB HOPE SCHOOL,<br>Defendant | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Esterine Julun (hereinafter "Plaintiff"), and complains of Defendant, Bob Hope School (hereinafter "Defendant"), and would respectfully show unto the Court as follows:

**I.**

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343. In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII").

2. Venue is proper in the Eastern District of Texas, Beaumont Division, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.

## **PARTIES**

3. Plaintiff, Esterine Julun, is a black/African American citizen of the United States and a resident of Beaumont, Texas. At all times relevant hereto, Plaintiff was an employee of Defendant. Plaintiff has been subjected to unlawful employment practices committed in Beaumont, Texas by employees and agents of the Defendant.

4. Defendant, Bob Hope School, is a domestic non-profit corporation holding a Texas open-enrollment charter. Defendant may be noticed of this lawsuit by serving the Superintendent and Chief Executive Officer, Bobby Lopez, 4545 Highway 73, Port Arthur, Texas 77642.

## III.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. Plaintiff filed a charge of employment discrimination against Defendant with the Houston District Office of the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

6. Plaintiff received a "Notice of Right to Sue" concerning the charge by letter dated May 19, 2023, entitling her to institute a civil action within 90 days of the date of receipt of said notice. This action is timely filed.

## IV.

## **FACTS AND CAUSES OF ACTION**

7. This action is authorized and instituted pursuant to Title VII. This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

8. Beginning on or about November 2022, and continuing through July 20, 2023, Plaintiff was repeatedly subjected to discrimination based on her race and/or color, black/African American, retaliation, and hostile work environment in violation of Title VII.

10. Plaintiff was employed with Defendant for four (4) years, from August 2018 until July 20, 2023. Plaintiff's starting salary was $43,000 and her ending salary was $73,165. While employed by Defendant, Plaintiff began with the district as a teacher in Port Arthur, Texas. After receiving recommendations from the principal which encouraged and cultivated her growth as an educator, Plaintiff eventually was asked to become a counselor for Defendant's Beaumont campus.

11. During her tenure with Defendant, Plaintiff received exemplary awards for her service and dedication while employed as an educator.

12. In 2021, Plaintiff was offered the position of counselor for the Beaumont campus. Although Plaintiff was uncertain of the complete requirements of becoming a school counselor, she was nonetheless confident in her years of experience as a qualified mental health professional, crisis counselor, as well as her academic development and leadership abilities.

13.     In September 2022, Plaintiff made phones calls and sent email messages to the principal and assistant principal requesting assistance with printing progress reports/report cards, 504 meetings, scheduling and other matters relating to her position as counselor. Plaintiff was instructed to reach out to the other counselors. Plaintiff received emails from the counselors who assisted as best they could, but the other counselors informed Plaintiff that they were not certain their advice was correct, because they, like Plaintiff, had received no training upon accepting the position. Everything Plaintiff learned during her first year as a counselor was through trial and error. There were many days she spent searching for the correct method of completing a task.

14.     As a counselor, Plaintiff was responsible for facilitating the STAAR & MAP test. On multiple occasions, Plaintiff requested training through various training courses, because her workload was getting unbearable due to testing and/or other campus urgencies, which increased her job duties and responsibilities.

15.     On or about November 4, 2022, Plaintiff was sent a text message by Defendant's SPED Director about meeting with her for SPED referrals in the conference room. Plaintiff brought the paperwork to the SPED Director, and the Director began asking questions about the referrals. The Director then informed Plaintiff that SPED referrals are the responsibility of the counselor, because the SPED teachers do not have time to do them. Plaintiff informed the Director that she was not given this task by her supervisor, and was not certain she would be able to do another task.  Plaintiff then explained to the Director that she had testing monthly and covered two campuses and scheduling of classes; and that the teachers were rapidly changing, and 504 is demanding and Plaintiff had not yet even begun to complete the annual meetings.

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff also had multiple bullying cases to investigate, students who were suicidal, etc. The director then told Plaintiff, "Well I got news for you, you have to do this, everyone else is, so I don't know what to tell you."

16. Plaintiff then inquired to the Director if she knew how the district planned to implement this bill to avoid being out of compliance with a state mandate. The Director stated that there has been no discussion, and proceeded to remind Plaintiff that going forth SPED referrals/initial paperwork would now be the responsibility of the counselor, i.e., Plaintiff.

17. On or about November 9, 2022, Plaintiff was called to the Principal's office. Plaintiff was informed that the SPED Director spoke with the CEO/Superintendent, Dean of Schools, and her supervisor about the conversation she and Plaintiff had on November 4th. There were many discrepancies in the message the Director relayed. After the discussion with Plaintiff's Principal, Plaintiff sent an email requesting a meeting with everyone involved to clear up the discrepancies and begin the discussion of the implementation of S.B. 179. However, Plaintiff was denied the meeting.

18. On or about December 2, 2022, the principal, assistant principal, and Plaintiff received RTI training from the SPED Director. Training is provided to ensure employees are empowered with knowledge of their responsibilities and roles on the job. Training produces confidence that improves productivity and reduces turnovers. Employees are encouraged to ask questions while in training to ensure that he/she understands what is being taught. It is always best practice when in training that if there is a question to raise your hand and wait to be acknowledged by the trainer; and this training was no different. The training slides presented

contradictions and to gain understanding, Plaintiff asked for clarity. Plaintiff was permitted to speak by the trainer each time. After the training was concluded, the trainer would stay until the close of the day discussing her personal life as Plaintiff completed assignments/tasks for the day.

19. On or about December 5, 2022, Plaintiff received a written reprimand. Plaintiff was informed that she was rude to the trainer on December 2nd. Plaintiff inquired as to how she was being rude? Plaintiff was never given an answer. Plaintiff was informed that all three campus administrators at the training received a written reprimand based solely on the words of the SPED Director who trained her. Plaintiff sent a text to the Dean of Schools and requested a meeting. In this meeting, Plaintiff verbalized her concern that once again information was relayed without the district doing their due diligence and investigating the matter and offering her the opportunity to make a statement. In said meeting that lasted about 10 minutes, Plaintiff was informed that the write-up would stand, because her principal said it happened. When Plaintiff asked what was said exactly, Plaintiff was denied a response and informed there would not be an opportunity to ask questions. Plaintiff then returned to her campus. The next day, Plaintiff sent an email requesting a copy of the notes taken at the meeting, and Plaintiff was denied copies.

20. On or about December 16, 2022, the CEO/Superintendent, Executive Director/Dean of Schools, SPED Director, and Dr. Lopez arrived on campus requesting the 504 binders, as well as the presence of Plaintiff and the Principal. The meeting began with a statement by the Superintendent who stated: "We are here to assist you with 504." However, the line of questions asked, and the directives/deadlines given suggested otherwise. They each took turns going through the binders. A question was asked that no one present in the room had the

answer to. The Executive Director then called every other Bob Hope School counselor/principal for the answer, and no one could provide an answer. After the final call, the CEO stated: "It doesn't matter, we don't get paid for 504." The answer to the question was given by Plaintiff's principal through trial and error. Directives and deadlines were given in this meeting; however, no training was provided, and once again Plaintiff was left to figure it out on her own. While others were enjoying the holiday break, Plaintiff was working to ensure the directives she was given were completed. The meeting was nothing more than an act of intimidation and degradation.

21. On January 6, 2023, Plaintiff sent an email with the updates from the December 16, 2022, meeting. Plaintiff did not receive a response until January 9th from the CEO/Superintendent requesting the same information that Plaintiff had provided in the previous email. On January 6, 2023, the counselors received 504 training with region five trainer Mrs. Sleeper. On January 13th, Plaintiff received her first training on documentation in Frontline for 504.

22. In the school district where Plaintiff is the only black/African American counselor, Plaintiff received disparate and unfair treatment from district administrators that no other counselor received. The district administrators did not attempt to intimidate and accuse other counselors of poor job performance, nor did they rummage through their binders as they did Plaintiff's. No other counselor was given directives and deadlines from the district administrators as Plaintiff was. Plaintiff also did not receive district training to be held accountable for work assignments such as 504 binders. Plaintiff asked for training and

assistance on multiple occasions, but was denied each time. Plaintiff suffered discrimination based on her race and/or color, because Plaintiff was not properly trained, but her white coworkers received significantly more help than Plaintiff while doing a similar job. Plaintiff was also given significantly more work to complete than her white coworkers.

23. Plaintiff suffered retaliation based on her complaints regarding training and the school's compliance with state mandates. After Plaintiff voiced her concerns and complaints, she started receiving emails from the Executive Director daily. Plaintiff was required to change her agenda to add a visit from the district's testing coordinator. No other counselor in the district received such harassing emails, multiple times a day; and none of them had the heavy workload that Plaintiff had. After Plaintiff received a false write up, she did not return to work due to stress caused by the discriminatory and retaliatory acts from Defendant's employees.

24. Defendant has failed to uphold their mission of integrity and respect. In section 7.4 of the Employee Handbook, claims of harassment should be immediately reported to the direct supervisor, and then the chain of command. Plaintiff reported the discrimination and harassment to her immediate supervisor, but it could not go any further, because the perpetrators of the discrimination and retaliation are the chain of command. According to Defendant's Employee Handbook, being "rude" does not constitute a violation of a district policy supported by part 10. When a non-black/African American woman simply stated that Plaintiff was being "rude," not only did the district fail to offer Plaintiff an opportunity to sit with the individual and discuss what transpired, but Plaintiff was given a written reprimand without giving her side to the story. In an attempt for Plaintiff to defend herself, she requested another meeting where she

sat before the executive director, the chief academic officer, and the human resource director. Plaintiff requested that her immediate supervisor be a part of the meeting, and she was informed that her immediate supervisor would not be there. It was anything but a meeting. Plaintiff was told that she could speak and when Plaintiff finished speaking, the staff would speak, and the meeting would be concluded with no further discussion. Plaintiff was not allowed to ask any questions concerning the write up, either.

25. Following the write up, Defendant continued with its harassment by placing demands/directives on Plaintiff for things which Plaintiff was not trained to do. In an act of intimidation, the district's superintendent (CEO), chief academic officer, executive director, and SPED director conducted a 504 audit. Not only was Plaintiff not trained on 504 documentation for the binders and the online program, but this same audit was not done to any other counselor at any other time. The questions asked in the audit were intended to intimidate Plaintiff, as the SPED director and no other counselor was aware on how to answer those questions. While everyone was able to spend the holiday break with their family and friends, Plaintiff had to give up days without compensation to ensure the directives were complete.

26. Plaintiff listened as her white colleagues verbalized the same concerns she once inquired about, but in a harsher tone, and nothing was done or said concerning them. Plaintiff listened as her white colleagues were given the privilege of being made aware that the superintendent/CEO may be looking through their 504 information, when Plaintiff was not given the same heads up. Plaintiff listened as her white colleagues stated their paperwork had not been touched in seven years and nothing was done as a result. Plaintiff's white colleagues were not

Page 9

required to report to the superintendent/CEO as she was told to do weekly.  In trainings, Plaintiff's white colleagues could ask as many questions as they desired and the questions were answered and they enjoyed laughter together, while Plaintiff was too afraid to speak because the last time she asked a question, Plaintiff was accused of being rude and received a written reprimand.

27. On information and belief, Defendant followed a policy and practice of retaliation against Plaintiff based on Plaintiff's complaints about noncompliance with state mandates. These retaliatory practices and policies include, but are not limited to, retaliating against employees who make formal complaints, in violation of Title VII.

28. On information and belief, Defendant followed a policy and practice of discrimination against Plaintiff because of her race and/or color, black/African American, in violation of Title VII.  The discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on her race and/or color in violation of Title VII.

29. Plaintiff was subjected to a hostile work environment and adverse employment actions by Defendant based on Plaintiff's race and/or color and/or complaints.

30. Plaintiff has suffered compensatory damages as the direct result of Defendant's discriminatory and retaliatory treatment of her.  Plaintiff would further show that Defendant's conduct was done willfully and with malice, and that she is entitled to liquidated and exemplary damages.

31. Defendant's conduct toward Plaintiff caused her severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory

damages.

32. The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

33. All conditions precedent to the filing of this action have occurred or have been fulfilled.

## V.

## DAMAGES

34. Plaintiff seeks statutory damages, back pay and front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII.

35. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## VI.

## JURY DEMAND

36. Plaintiff respectfully requests a jury trial.

## VII.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that

Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
400 S. Zang Blvd. Suite 1200
Dallas, Texas 75208
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**